1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   CARAVEL/WOODWIND CHARTERS,
     INC., a corporation; and
12   ST. PAUL FIRE & MARINE
     INSURANCE CO., a corporation,
13                                        NO. CIV. S-05-1435 LKK/KJM

14        Plaintiffs,

15     v.                                      O R D E R

16   TAHOE KEYS MARINA, LLC dba
     TAHOE KEYS MARINA, a California
17   limited liability company; RAY
     CARREAU, an individual; RICHARD
18   HORTON, an individual; TAHOE
     KEYS PROPERTY OWNERS' ASSOCATION,
19   a corporation; and TAHOE KEYS
     BEACH AND HARBOR ASSOCIATION, INC.,
20   a corporation,

21        Defendants.
     _____/
22

23        Pending before the court is a motion for summary judgment or,

24   in the alternative, partial summary judgment by defendant Tahoe

25   Keys Marina, LLC ("defendant").  Plaintiff, Caravel/Woodwind

26   Charters, Inc. ("plaintiff") filed a complaint against defendant

                                     1

1  for damages to its boat, *The Safari Rose*, arising out of an

2  incident on Lake Tahoe in which *The Safari Rose* hit a submerged

3  concrete slab in a channel owned and maintained by defendant.

4  Plaintiff alleges two causes of action, negligence and breach of

5  an oral contract.  Defendant moves for summary judgment on both

6  causes of action.

7  **I.**

8  **FACTS**[1]

9  **A.   THE CHANNEL**

10     Tahoe Keys Marina, LLC ("defendant") controls and manages a

11  sheltered marina on Lake Tahoe used for the berthing of boats.

12  Def.'s SUF 1-2.  A channel, 80 feet wide and 650 feet long,

13  connects the marina to the rest of Lake Tahoe.  Def.'s SUF 7, 9-10.

14  At the center of the channel, the depth is at least eight feet.

15  Def.'s SUF 11.

16     The depth at the sides of the channel, near the retaining

17  walls, is disputed.  Defendant claims it to be four to five feet

18  and plaintiff claims it to be six to eight inches.  Def.'s SUF 12;

19  Buttling Dep. at 20:24-21:1.  The parties also dispute how clear

20  the water was at the sides of the channel.  Defendant claims the

21  water at the sides is lighter in color than in the center of the

22  channel and that the sandy bottom floor was "clearly visible" to

23  boats passing through the channel.  Def.'s SUF 15, 18-19.

24  ////

25

26     [1]  All facts are undisputed unless otherwise noted.

2

Plaintiff alleges that the bottom was not "clearly visible" due to poor clarity and the growth of mill foil at the bottom of the lake. Marion Dec. at ¶ 8.

**B.   THE CONCRETE CAP**

Extending out of the east retaining wall on the side of the channel was a completely submerged slab of concrete left over from a conduit for utility lines.  Def.'s SUF 20-21.

The parties dispute the size of this concrete cap.[2] Defendant claims that the cap extended no less than five feet and no more than fourteen feet from the retaining wall into the channel. Def.'s SUF 26.  Plaintiff maintains that the cap extended at least sixteen feet into the channel.  Buttling Dep. at 110:18-111:19. The parties also dispute whether the cap was visible to boats traveling in the channel.  Defendant claims it was clearly visible to people above the water.  Def.'s SUF 27.  Plaintiff argues it was not visible for the same reasons that the bottom of the floor was not visible on the sides of the channel.  Marion Dec. at ¶ 8.

**C.   *THE SAFARI ROSE* AND THE INCIDENT**

Caravel/Woodwind Charters ("plaintiff") is a passenger cruise business that operates on Lake Tahoe.  One of the vessels owned and operated by plaintiff is *The Safari Rose*, which was housed at a berth rented from defendant.  Dunham Dec. at ¶¶ 2-4; Def's. SUF 88.

////

////

---

[2]  The cap is no longer in the channel, as it was removed after the incident in question.  Buttling Dep. at 96:11-24.

1  Plaintiff asserts that defendant represented that the channel had
2  a depth of nine feet across the entire channel, while defendant
3  disputes ever making such a representation.   Dunham Dec. at ¶ 4;
4  Def's. SUF 90.   Neither party disputes that plaintiff's other boats
5  had navigated across the channel without incident in the past, that
6  plaintiff corporation's president thought it was "common knowledge"
7  that channels were shallower on the sides than in the middle and
8  that he knew that not all parts of the channel were nine feet.
9  Def's. SUF 42, 47, 91.

10  On July 17, 2003, *The Safari Rose* embarked from the Marina.
11  Def's. SUF 64.   David Marion ("Marion") was the captain and Karen
12  File was the main deck hand, entrusted to look out for obstructions
13  in the vessel's path.   Def's. SUF 66-68.[3]   Marion testified that
14  he knew it was safer to navigate in the center of the channel than
15  on the sides.   Def's. SUF 57-58.   As Marion was navigating *The*
16  *Safari Rose* out of the channel and onto the lake, he steered the
17  vessel to the right to avoid a sailboat coming into the channel.
18  Def.'s SUF 71-72.

19  What happened next is disputed.   Plaintiff alleges *The Safari*
20  *Rose* then hit the submerged cap, forcing the stabilizers attached
21  to the bottom of the ship up through the hull of the ship, causing
22  water to flood the vessel.   Def.'s SUF 75-76.   Defendant contends

23  ─────────────

24  [3]   It is unclear where File was during the incident.   Marion testified that he could not recall where she was.   Def.'s SUF 70.
25  Plaintiff explains that File was scheduled to be deposed on June 16, 2006 but the court has no knowledge as to whether she was
26  deposed or her testimony regarding her location during the incident if she was in fact deposed.

1  that Marion negligently steered *The Safari Rose* too close to the

2  retaining wall and dragged the ship almost eighty feet across the

3  bottom of the channel before hitting the cap.  Def.'s SUF 78.

4      The parties dispute whether Marion admitted to knowing about

5  the cap and simply forgot about it on the day of the accident.

6  Defendant claims that the day after the incident, Marion approached

7  Steve Buttling, a manager of the Marina who had known Marion for

8  some time, and admitted that he knew "it" was there and that the

9  incident was his fault.  Buttling Dec. at ¶ 17; Buttling Dep. at

10  86:16.  Marion disputes having made this comment.  Marion Dec. at

11  ¶ 15.  Plaintiff also contends that Marion's alleged testimony to

12  Buttling about hitting "it" is ambiguous and that Buttling himself

13  admitted that he was not sure whether Marion was referring to the

14  cap or the retaining wall.  Buttling Dep. at 87:20-23.

15                              **II.**

16                           **STANDARDS**

17      Summary judgment is appropriate when it is demonstrated that

18  there exists no genuine issue as to any material fact, and that the

19  moving party is entitled to judgment as a matter of law.  Fed. R.

20  Civ. P. 56(c); <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

21  157 (1970); <u>Secor Limited v. Cetus Corp.</u>, 51 F.3d 848, 853 (9th

22  Cir. 1995).

23  ////

24  ////

25  ////

26  ////

1    Under summary judgment practice, the moving party

2         [A]lways bears the initial responsibility of
          informing the district court of the basis for
3         its motion, and identifying those portions of
          "the pleadings, depositions, answers to
4         interrogatories, and admissions on file,
          together with the affidavits, if any," which
5         it believes demonstrate the absence of a
          genuine issue of material fact.

6

7    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

8    nonmoving party will bear the burden of proof at trial on a

9    dispositive issue, a summary judgment motion may properly be made

10   in reliance solely on the 'pleadings, depositions, answers to

11   interrogatories, and admissions on file.'"  Id.  Indeed, summary

12   judgment should be entered, after adequate time for discovery and

13   upon motion, against a party who fails to make a showing sufficient

14   to establish the existence of an element essential to that party's

15   case, and on which that party will bear the burden of proof at

16   trial.  See id. at 322.  "[A] complete failure of proof concerning

17   an essential element of the nonmoving party's case necessarily

18   renders all other facts immaterial."  Id.  In such a circumstance,

19   summary judgment should be granted, "so long as whatever is before

20   the district court demonstrates that the standard for entry of

21   summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

22   at 323.

23       If the moving party meets its initial responsibility, the

24   burden then shifts to the opposing party to establish that a

25   genuine issue as to any material fact actually does exist.

26   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir. 1998).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

7

1  Thus, the "purpose of summary judgment is to 'pierce the pleadings

2  and to assess the proof in order to see whether there is a genuine

3  need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

4  Civ. P. 56(e) advisory committee's note on 1963 amendments); see

5  also International Union of Bricklayers & Allied Craftsman Local

6  Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.

7  1985).

8       In resolving the summary judgment motion, the court examines

9  the  pleadings,  depositions,  answers  to  interrogatories,  and

10 admissions on file, together with the affidavits, if any.  Rule

11 56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

12 (9th Cir. 1999).  The evidence of the opposing party is to be

13 believed, see Anderson, 477 U.S. at 255, and all reasonable

14 inferences that may be drawn from the facts placed before the court

15 must be drawn in favor of the opposing party, see Matsushita, 475

16 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

17 655 (1962) (per curiam)); See also Headwaters Forest Defense v.

18 County  of  Humboldt,  211  F.3d  1121,  1132  (9th  Cir.  2000).

19 Nevertheless, inferences are not drawn out of the air, and it is

20 the opposing party's obligation to produce a factual predicate from

21 which the inference may be drawn.  See Richards v. Nielsen Freight

22 Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d

23 898, 902 (9th Cir. 1987).

24      Finally, to demonstrate a genuine issue, the opposing party

25 "must do more than simply show that there is some metaphysical

26 doubt as to the material facts. . . . Where the record taken as a

1  whole could not lead a rational trier of fact to find for the

2  nonmoving party, there is no 'genuine issue for trial.'"

3  Matsushita, 475 U.S. at 587 (citation omitted).

4                              **III.**

5                           **ANALYSIS**

6       Plaintiff alleges two causes of action, negligence and breach

7  of oral contract.  Defendant moves for summary judgment as to both

8  claims.[4]  For the reasons explained herein, the court denies

9  defendant's motion for summary judgment.

10  **A.   DUTY & BREACH**

11       It is well established that defendant, as wharfinger,[5] had a

12  duty of care towards plaintiff.  "Although a wharfinger does not

13  guarantee the safety of vessels coming to his wharves, he is bound

14  to exercise reasonable diligence in ascertaining the condition of

15  the berths thereat, and if there is any dangerous obstruction to

16  remove it, or to give due notice of its existence to vessels about

17  to use the berths.'" Smith v. Burnett, 173 U.S. 430, 433 (1998).

18  ////

19  _____

20       [4]  Although defendant moves on the breach of contract claim,
   defendant fails to brief the contract claim.  In fact, neither
21  party briefs the issue, or points to where in the record there is
   evidence of a contract, much less a breach of contract.  The court
22  will not resolve an issue in a motion for summary judgment that has
   not been briefed by either party.  In this respect, defendant has
23  failed to meet its duty of demonstrating that there exists no
   genuine issue as to any material fact, and that it is entitled to
24  judgment as a matter of law.  For this reason, the court denies
   defendant's motion with respect to the contract claim.

25

26       [5]  A "wharfinger" is the "owner and occupier of a wharf."
   Black's Law Dictionary, 6th Ed. 1990.

                                  9

1    That said, in this circuit the "general concept of a formal
2 notice which seemed to originate in <u>Smith v. Burnett</u> . . . is not
3 applied where the alleged construction or condition is open and
4 obvious to those in charge of the vessel's management." <u>Grace</u>
5 <u>Line, Inc. v. Todd Shipyards Corp.</u>, 500 F.2d 361, 365 (9th Cir.
6 1974)(citing <u>General Construction Co. v. Isthmian Lines, Inc.</u>, 259
7 F. Supp. 336, 338-339 (D. Or. 1966)).

8    The parties dispute the extent to which the cement cap was
9 open and obvious to those in charge of the vessel's management.
10 Defendant claims that Marion should have known of the cap because
11 the water was clear, and the bottom of the channel, as well as the
12 cap itself, were "clearly visible" to people above the water line.
13 <u>See</u> Def.'s Mot. for Summ. J., at 10; Def.'s SUF 15, 18-19, 27.
14 Defendant also points out that Marion had navigated the channel
15 without incident on several prior occasions, Def.'s SUF 51-52, and
16 that Marion, as well as the owner of the vessel, Dunham, knew that
17 not all portions of the channel were exactly nine feet in depth,
18 Def.'s SUF 57, 91-92.  Defendant also maintains that even if the
19 water were not clear, the vessel "could have easily picked up the
20 shallower depths found at the sides of the Channels, or the Cap,
21 on its fathometer."  Def.'s Mot. for Summ. J. at 12.

22    Finally, defendant avers that Marion confessed that he knew
23 the cap was there at the time of the allision.

24    Plaintiff maintains that the cap was not easily visible.
25 Specifically, plaintiff avers that "the depth of the water at the
26 sides of the channel and the cement was not clearly visible at the

1  time of the accident."  Pl.'s Response to Def.'s SUF 27 (citing

2  Dunham Decl. ¶ 12).  Plaintiff claims that defendant had told

3  plaintiff that the channel was nine feet deep throughout.  <u>See</u>

4  Dunham Dec. at  ¶ 4.

5      As noted above, plaintiff also contests Marion's alleged

6  confession.  Marion denies that he made such a confession.  Marion

7  Dec. at ¶ 15.

8      The parties clearly dispute whether the cap was open and

9  obvious to the management of *The Safari Rose* and, for reasons

10  explained herein, this factual dispute precludes summary judgment.

11      The inquiry as to whether the cap was a condition that was

12  open and obvious focuses on the knowledge of the management of the

13  vessel, and <u>not</u> a hypothetical person.  The Ninth Circuit has

14  explicitly explained that the question is whether the condition was

15  open and obvious <u>to those in charge of the vessel's management</u>.

16  <u>Grace Line</u>, 500 F.2d at 365. (emphasis added).  In discussing the

17  open and obvious standard, the <u>Grace</u> court explains that

18  "[r]egardless of whether the [plaintiff] should have been aware of

19  the danger, [defendant] had a duty to remove it or to give notice

20  <u>unless the [plaintiff] was actually aware of it</u>." <u>Id</u>.   In the case

21  at bar, defendant fails to meet its Rule 56(c) burden.  Defendant

22  cannot demonstrate the absence of  genuine issues of material fact.

23  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  As discussed,

24  the parties vigorously contest whether or not the cap was so open

25  and obvious that Marion actually knew of the cap at the time of the

26  accident.  This dispute is a question of fact which must be left

1  to a trier of fact.  Therefore, summary judgment is inappropriate
2  and must be denied.

3      If a trier of fact determines that the cap was actually open
4  and obvious to Marion at the time of the incident, then defendant's
5  duty would be discharged and the inquiry would end.  If, however,
6  a trier of fact were to find that the cap was not open and obvious
7  and that defendant breached its duty owed to plaintiff, the trier
8  of fact would need to make a finding as to causation and determine
9  whether defendant's breach was a proximate cause of the accident.

10 **B.    CAUSATION**

11     In order to establish that defendant was negligent, there must
12 be a causal connection between the alleged breach of duty and the
13 resulting injury.

14     Two maritime law presumptions are relevant in determining
15 whether defendant's alleged breach proximately caused the accident.
16 Under <u>The Pennsylvania</u> rule, a ship that violates a statutory rule
17 intended to prevent collisions is presumed to be the contributing,
18 if not the sole, cause of the incident.  <u>The Pennsylvania</u>, 86 U.S.
19 125, 136 (1873), <u>overruled on other grounds by</u> <u>United States v.</u>
20 <u>Reliable Transfer Co.</u>, 421 U.S. 397, 411 (1975); <u>Trinidad Corp. v.</u>
21 <u>S.S. Keiyoh Maru</u>, 845 F.2d 818, 824 (9th Cir. 1989)(<u>The</u>
22 <u>Pennsylvania</u> rule applies in Ninth Circuit).

23     <u>The Oregon</u> presumption holds that when a vessel collides with
24 a stationary object, the vessel is presumed to be at fault.  <u>The</u>
25 <u>Oregon</u>, 158 U.S. 186, 192-193 (1895);  <u>Wardell v. Department of</u>
26 <u>Transp., Nat'l Transp. Safety Bd.</u>, 884 F.2d 510, 512 (9th Cir.

1989).

A finding that one or both of these presumptions applies to the facts in this case shifts the burdens of production and proof to the vessel to prove it was not the proximate cause of the allision. The Pennsylvania, 86 U.S. at 136. ("burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that could not have been"); Carr v. Hermosa Amusement Corp., 137 F.2d 983, 985 (9th Cir. 1943) (Oregon presumption "places a 'burden of proof' on the moving vessel").

The court notes further that comparative negligence is the basis for apportionment of fault and causation in admiralty cases. United States v. Reliable Transfer Co., 421 U.S. 397, 411 ("[I]n a maritime collision . . . liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault"). Thus, even if defendant's negligence is established, the question of comparative negligence remains. For the reasons discussed herein, the court concludes that disputed facts concerning causation prevents the court from entering summary judgment for defendant.

## 1.   **The Pennsylvania Rule**

If defendant establishes that plaintiff violated any statutory rule, The Pennsylvania presumption shifts the burden of proof to plaintiff to prove that "the violation could not reasonably be held to have been a proximate cause of the collision." Trinidad Corp., 845 F.2d at 824 (quoting States S.S. Co. v. Permanente S.S. Corp.,

13

231 F.2d 82, 87 (9th Cir. 1956)).  To rebut the presumption, plaintiff must prove not merely that its "fault might not have been one of the causes of the collision but that it could not have been one of the causes." Trinidad Corp., 845 F.2d at 824.

Defendant maintains that *The Safari Rose* violated three Inland Rules of Navigation and therefore, under The Pennsylvania Rule, plaintiff's actions are presumed to be a proximate cause of the allision.[6] Def.'s Mot. For Summ. J. at 22.   I address each of the alleged violations in turn.

### a.   Lookout Rule

Defendant claims that *The Safari Rose* was in violation of the Lookout Rule by failing to maintain a proper lookout on the boat to warn of possible collisions.[7]   Failing to post a lookout in violation of 33 U.S.C. § 2005 is a violation of a statutory duty and therefore, raises a presumption of negligence under The Pennsylvania rule.  Trinidad, 845 F.2d at 826.

Defendant, as the moving party, fails to tender evidence that establishes that *The Safari Rose* violated the Lookout Rule.  The parties agree that Karen File was the only other crew member on board with Marion and that one of her duties was to look out for

---

[6]  The Inland Rules of Navigation, 33 U.S.C. §§ 2001 et seq., are navigation rules that "apply to all vessels upon the inland waters of the United States."

[7]  33 U.S.C. § 2005 states "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision."

obstructions, and that she did not bring any obstruction to Marion's attention.  The parties also agree that Marion cannot say for sure where File was located on the boat prior to the incident. Def.'s SUF 67-69.

That said, defendant has failed to establish that File was not, in fact, present at the front of the boat.  The only evidence regarding File's location is Marion's testimony that he could not remember where she was on the vessel prior to the allision.  Def.'s SUF 70.  This testimony does not preclude the possibility that File was in fact, located in lookout position at the bow of the boat. In short, the testimony is silent as to File's actual location. Without more, the court cannot conclude that plaintiff was in violation of the Lookout Rule.

In addition, the parties dispute the visibility and clarity of the water at the time of the incident.  <u>See</u> Def.'s SUF 15, 18-19, 27; Marion Dec. at ¶ 8.  This dispute is material as it goes to rebutting the presumption that the violation was a cause of the allision.  If a trier of fact determined that plaintiff did in fact fail to maintain a lookout, thus triggering <u>The Pennsylvania</u> rule, there remains a dispute as to whether the lack of a lookout was a cause of the allision or, if the allision would have occurred anyway because the cap was not visible.  In sum, the court finds that the dispute regarding File's actual location, and the dispute regarding the clarity of the water at the time of the allision precludes summary judgment as to the Lookout Rule.

////

### b.   Prudent Mariner Rule

Defendant avers that Marion violated the Prudent Mariner Rule by failing to use the fathometer while navigating *The Safari Rose* through the channel.[8]  Def.'s SUF 82; Def.'s Mot. For Summ. J. at 23.

The Prudent Mariner Rule establishes a general duty on all mariners to use prudent seamanship and provides that no mariners are exonerated from adhering to either the specific Inland Rules of Navigation or the ordinary practice of prudent seamen, except when necessary to avoid immediate danger.[9]

Defendant points to no specific statutory duty to use and maintain a fathometer capable of measuring depth.  Thus, whether Marion violated the Prudent Mariner Rule depends on whether it is "ordinary practice of a prudent seaman" to utilize a fathometer. Defendant fails to tender any evidence as to what constitutes ordinary practice with respect to a fathometer.  Moreover, the parties dispute the extent to which Marion utilized the fathometer during or immediately before the incident.  Def.'s SUF 57-58, 60.

////

---

[8]   33 U.S.C. § 2002(a) states "[n]othing in these Rules [33 USCS §§ 2001 et seq.] shall exonerate any vessel, or the owner, master, or crew thereof, from the consequences of any neglect to comply with these Rules [33 USCS §§ 2001 et seq.] or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

[9]   See 33 U.S.C. § 2002(b) which reads "[i]n construing and complying with these Rules due regard shall be had to all dangers of navigation and collision and to any special circumstances, including the limitations of the vessels involved, which may make a departure from these Rules necessary to avoid immediate danger."

1    Even if the court concluded that plaintiff violated the
2    Prudent Mariner Rule, there remains a dispute as to whether the
3    violation was actually a cause of allision.  As discussed, if
4    plaintiff can establish that the violation was not a cause of the
5    allision, then plaintiff effectivity rebuts The Pennsylvania
6    presumption.  Here, plaintiff alleges that even if Marion violated
7    the Prudent Mariner Rule by failing to use the fathometer, the
8    allision was inevitable and was not caused by Marion's failure to
9    use the fathometer.  See Sharpe Dec. at ¶ 10; Def.'s SUF 82.

10   It is evident that material factual disputes remain regarding
11   the prudent mariner rule and whether a violation of that rule was
12   a proximate cause of the allision.  For this reason, summary
13   judgment must be denied on these grounds.

14            c.   **Narrow Channel Rule**

15    Defendant maintains that Marion violated the Narrow Channel
16   Rule by straying away from the center of the channel to let the
17   sailboat pass.[10]  Def.'s SUF 81; Def.'s Mot. For Summ. J. at 24.
18   Plaintiff asserts that Marion did not violate the Narrow Channel
19   Rule by steering to the right to avoid the sailboat, as he effected
20   a proper passing and kept as near to the outer limit of the channel
21   as was safe and practicable given the size of the cap.  Sharpe Dec.

22   _____

23        [10]  33 U.S.C. § 2009 states in pertinent part "(a)(I) A vessel
     proceeding along the course of a narrow channel or fairway shall
24   keep as near to the outer limit of the channel or fairway which
     lies on her starboard side as is safe and practicable. . . (b) A
25   vessel of less than 20 meters in length or a sailing vessel shall
     not impede the passage of a vessel that can safely navigate only
26   within a narrow channel or fairway."

1  at ¶ 8.

2       Again, this dispute precludes summary judgment.  Whether

3  Marion navigated "as near to the outer limit of the channel . . .

4  as is safe and practicable" as required by § 2009(a)(I), depends

5  on the size of the cap, whether he knew of the cap's location and

6  whether he could see the cap.  See Def.'s SUF 26-27; Buttling Dep.

7  at 96:11-24, 110:18-111:19; Marion Dec. at ¶ 8.  As discussed,

8  whether Marion was actually aware of the cap is disputed.

9       **2.   The Oregon Rule**

10      When a vessel hits a stationary object, The Oregon rule places

11 the burden on the vessel to prove by a preponderance of the

12 evidence that the vessel was without fault or that the allision was

13 occasioned by the fault of stationary object or that it was the

14 result of an inevitable accident.  Carr v. Hermosa Amusement Corp.,

15 137 F.2d 983, 985 (9th Cir. 1943); Wardell, 884 F.2d at 513

16 (plaintiff has burden to demonstrate that "either that the

17 collision was the fault of the stationary object, that the moving

18 vessel acted with reasonable care, or that the collision was an

19 unavoidable accident").  "Ultimately, the presumption derives from

20 the common-sense observation that moving vessels do not usually

21 collide with stationary objects unless the vessel is mishandled in

22 some way."  American Petrofina Pipeline Co. v. M/V Shoko Maru, 837

23 F.2d 1324, 1326 (5th Cir. 1988).

24      That said, some courts have held that The Oregon rule does not

25 apply in the case of an allision with a submerged hidden object.

26 ////

1   <u>Delta Transload, Inc. v. Motor Vessel "Navios Commander"</u>, 818 F.2d

2   445, 450 (5th Cir. 1987)(the presumption does not apply to

3   allisions with sunken or hidden objects); <u>Pelican Marine Carriers,</u>

4   <u>Inc. v. City of Tampa</u>, 791 F.Supp. 845, 852 (M.D. Fla. 1992)(same).

5   Therefore, as the Fifth Circuit explained, "the party who is

6   invoking the presumption has the burden of proving either that the

7   object was visible or that the vessel otherwise possessed knowledge

8   of the object's location." <u>Id</u>.

9        Defendant maintains that *The Safari Rose* is presumptively

10  negligent under <u>The Oregon</u> rule.  Def.'s Mot. for Summ. J. at 21.

11  Defendant submits that it is undisputed that the cap was a

12  stationary object and that *The Safari Rose* hit the cap, causing the

13  damage.  Def.'s SUF 20, 75-76.  Plaintiff argues, however, that

14  since the cap was completely submerged and hidden, defendant is at

15  fault for the allision.  Pl.'s Opp. to Mot. For Summ. J. at 7.

16       The court adopts the reasoning of the Fifth Circuit in

17  concluding that <u>The Oregon</u> Rule does not apply to hidden submerged

18  objects.  This makes sense as it is difficult to comprehend how a

19  vessel could be presumptively liable for an object that, by its

20  nature of being hidden, was unknown to the vessel.  Since the

21  parties dispute the hidden nature of the cap, however, the court

22  cannot conclude as a matter of law that <u>The Oregon</u> rule does not

23  apply.

24       If a trier of fact determined that the cap was visible, <u>The</u>

25  <u>Oregon</u> presumption applies and plaintiff has the burden to prove

26  that the vessel was without fault, that the collision was

1    occasioned by the fault of stationary object or that it was the
2    result of an inevitable accident.  Carr v. Hermosa Amusement Corp.,
3    137 F.2d 983, 985 (9th Cir. 1943).  There are several factual
4    disputes that preclude the court from determining whether or not
5    plaintiff can prove the absence of fault.
6         First, whether the stationary concrete cap was the cause of
7    the allision depends on whether it was open and obvious.  If the
8    cap was open and obvious, the cause of the allision may be solely
9    attributable to the negligence of Marion.  If the cap was not open
10   and obvious, then the accident could be attributed to the cap, and
11   defendants' failure to warn, provided that a reasonable and prudent
12   person would not have known about the cap.  As explained
13   previously, the open and obvious nature of the cap is disputed.
14        Second, the parties contest whether or not the vessel acted
15   with reasonable care.  In Grace, the Ninth Circuit explained that
16   actual awareness of the hazard was "required to obviate
17   [defendant's] duty to remove the hazard or give notice of it; [and]
18   granting [defendant] had a duty in the absence of actual notice,
19   the vessel also may have been negligent if it should have had
20   awareness" of the dangerous condition.  Grace Lines, 500 F.2d at
21   366.  In other words, plaintiff may be presumptively at fault if
22   plaintiff should have known of the cap's location.  Like with the
23   question of plaintiff's actual awareness, a trier of fact must
24   determine whether plaintiff should have been aware of the cap.
25        Finally, it is disputed whether the accident was unavoidable.
26   ////

An "unavoidable accident" will only be found if the collision could not have been prevented by "human skill and precaution, and a proper display of nautical skill."   <u>In re Seaspan Queen</u>, 172 F.Supp.2d 1314, 1321 (E.D. Wash. 2001) (citations omitted) (quoting <u>The Louisiana</u>, 70 U.S. 164, 173 (1865)); <u>see also</u> <u>Weyerhaeuser Co.</u> <u>v. Atropos Island</u>, 777 F.2d 1344, 1347 (9th Cir. 1985).

The question of whether Marion could have used skill to avoided hitting the cap is clearly disputed.  Again, as discussed earlier, this inquiry hinges on whether the cap was visible and obvious, the size of the cap, the location of Karen File, and Marion's prior knowledge of the cap.

### 3.   Comparative Negligence

Even if defendant is found to be negligent, the issue of liability remains.  In <u>Reliable Transfer Co.</u>, the Supreme Court adopted "pure" comparative fault as the basis of apportionment in admiralty cases. 421 U.S. at 411.  This abrogated the prior standard of divided damages.  Under the "pure" comparative fault system, when the negligence of multiple parties contribute to the loss, the court must make a complete apportionment of damages between the negligent parties based on their respective degrees of fault.  <u>See</u> Thomas J. Schoenbaum, <u>Admiralty & Maritime Law</u>, § 5-4 (3rd Ed. 2001).

Therefore, if defendant is found to be negligent in failing to warn of the concrete cap, plaintiff's recovery can be limited if found to be comparatively negligent.  Whether plaintiff contributed to the allision is, for all the reasons discussed

previously, a disputed issue of fact.

    For all the reasons explained above, defendant's motion for summary judgment is DENIED.

    IT IS SO ORDERED.

    DATED: June 28, 2006.

                    LAWRENCE K. KARLTON
                    SENIOR JUDGE
                    UNITED STATES DISTRICT COURT